713 A.2d 82

**Patricia RUE, Appellant,**

**v.**

**K–MART CORPORATION, Appellee.**

Supreme Court of Pennsylvania.

Argued Feb. 4, 1998.

Decided June 16, 1998.

14

Stephen R. Bolden, Philadelphia, for Patricia Rue.

Marguerite S. Walsh, Philadelphia, Richard J. Antonelli, Mark R. Hornak, Pittsburgh, Andrew W. Allison, Philadelphia, for K-Mart Corp.

Before FLAHERTY, C.J., and ZAPPALA, CAPPY, CASTILLE, NIGRO and NEWMAN, JJ.

## OPINION OF THE COURT

NEWMAN, Justice.

Patricia Rue (Rue) appeals from an *en banc* Order of the Superior Court reversing an Order of the Court of Common Pleas of Bucks County (trial court) that denied K–Mart Corporation's (K–Mart) Post–Trial Motions and upheld a jury's verdict in favor of Rue on a defamation claim. The issue in this appeal is whether, in a subsequent civil action, the doctrine of collateral estoppel applies to the factual findings of an Unemployment Compensation Referee (Referee).

## FACTUAL AND PROCEDURAL HISTORY

K–Mart employed Rue in its Bucks County distribution center. On January 10, 1989, K–Mart terminated Rue's employment, informing her that security personnel had observed her stealing a bag of potato chips from inventory and eating the chips. After Rue's dismissal, other employees at the distribution center began to discuss her termination, causing a slowdown in productivity. To address the situation, K–Mart called a meeting of the distribution center employees and informed them that Rue had been terminated for stealing and eating a bag of potato chips.

Following her termination, Rue applied for and was granted unemployment compensation benefits by a local Job Center. K–Mart appealed the Job Center's determination to a Referee, arguing that Rue had committed willful misconduct and therefore should be denied benefits pursuant to Section 402(e) of the Unemployment Compensation Law, Act of December 5, 1936, Second. Ex.Sess., P.L. (1937) 2897, *as amended*, 43 P.S.

§ 802(e).[1]   At the Referee's hearing, K–Mart presented testimony in support of its allegation that Rue had stolen and eaten a bag of potato chips.   The Referee, however, found as a matter of fact that, "[Rue] did not misappropriate company property and did not eat a bag of the employer's potato chips on January 10, 1989."   Accordingly, the Referee affirmed the Job Center's grant of benefits.   K–Mart did not appeal the Referee's decision.

Subsequently, Rue instituted a civil action against K–Mart in the trial court, alleging, *inter alia,* that K–Mart had defamed her by telling the distribution center employees that she had stolen a bag of potato chips.   Prior to trial, Rue filed a Motion in Limine, seeking to prevent K–Mart from offering testimony to establish the truth of its assertion that Rue had stolen the potato chips.   The trial court granted the Motion in Limine, holding that the doctrine of collateral estoppel precluded K–Mart from attacking the Referee's factual finding that Rue had not misappropriated the bag of chips.

The case was tried by jury, which found K–Mart liable for defamation.   The jury awarded Rue ninety thousand dollars ($90,000.00) in compensatory damages and 1.4 million dollars ($1,400,000.00) in punitive damages.   K–Mart filed Motions for Post–Trial Relief, which were denied, and then appealed to the Superior Court.

After a panel of the Superior Court affirmed the trial court's Order, K–Mart petitioned for reargument before the Superior Court *en banc,* which was granted.   In a published Opinion, the court *en banc* reversed the trial court's decision and remanded the case for a new trial, holding that the doctrine of collateral estoppel did not apply to the Referee's factual findings.   Judge Ford Elliott filed a Concurring and Dissenting Opinion in which she agreed with the majority's conclusion, but disagreed with their analysis of a line of cases

---

1.   43 P.S. § 802(e) provides that, "An employe shall be ineligible for compensation for any week ... [i]n which his unemployment is due to his discharge or temporary suspension from work for willful misconduct connected with his work...."

concerning the application of collateral estoppel in the workers' compensation context.

## DISCUSSION

■ Overall, the doctrine of collateral estoppel, or issue preclusion, applies where the following four prongs are met:

(1) An issue decided in a prior action is identical to one presented in a later action;

(2) The prior action resulted in a final judgment on the merits;

(3) The party against whom collateral estoppel is asserted was a party to the prior action, or is in privity with a party to the prior action; and

(4) The party against whom collateral estoppel is asserted had a full and fair opportunity to litigate the issue in the prior action.

*See, e.g., Shaffer v. Smith,* 543 Pa. 526, 673 A.2d 872 (1996); *Safeguard Mutual Insurance Co. v. Williams,* 463 Pa. 567, 345 A.2d 664 (1975). Here, there is no question that the second and third prongs are satisfied. K–Mart did not appeal the Referee's decision, so it became a final judgment; and K–Mart was a party to the proceedings before the Referee. Thus, we focus our discussion on the first and fourth prongs.

### Identity of Issues

■ The factual issue decided by the Referee—whether Rue in fact misappropriated and consumed a bag of potato chips—is undoubtedly identical to the issue addressed in Rue's Motion in Limine in the defamation action. Nevertheless, the Superior Court held that:

Despite the apparent similarity of issues involved, we are not convinced that the facts found in the unemployment compensation case merit preclusive effect in the present defamation action because of the vastly differing policy considerations underlying the two actions.

. . .

Analyzing the underlying public policy as mandated by [*Odgers v. Unemployment Compensation Board of Review*, 514 Pa. 378, 525 A.2d 359 (1987)], we must presently decide not merely whether the factual determination made in [Rue's] unemployment compensation action, i.e., that she did not steal a bag of potato chips, is, on its face, sufficiently similar to that in the defamation suit to merit preclusive effect. We must inquire much further and determine whether the public policy underlying the Unemployment Compensation Law and [Rue's] civil action for defamation are sufficiently similar to permit the application of collateral estoppel.

*Rue v. K–Mart Corp.*, 456 Pa.Super. 641, 646–48, 691 A.2d 498, 500–01 (1997). The Superior Court's analysis of *Odgers*, however, was erroneous.

In *Odgers*, we held that the Commonwealth Court's decision that a work stoppage by teachers was an illegal "strike" pursuant to Section 1002 of the Public Employe Relations Act (PERA), Act of July 23, 1970, P.L. 563, No. 195, *as amended*, 43 P.S. § 1002, did not have preclusive effect in the teachers' subsequent appeal of the Unemployment Compensation Board of Review's denial of unemployment compensation benefits pursuant to Section 402(d) of the Unemployment Compensation Law, *as amended*, 43 P.S. § 802(d).[2] We noted that, "[PERA] and the Pennsylvania Unemployment Compensation Law were enacted to promote decidedly different public policies of this Commonwealth;" and concluded that, "[i]t logically follows that the determination of what constitutes a strike for purposes of PERA is not coextensive with the determination whether a work stoppage is a strike or a lock-out under the terms of the Unemployment Compensation Law...." *Odgers*, 514 Pa. at 387–89, 525 A.2d at 363–64.

Although the Superior Court in the instant case correctly noted that the determination of whether Rue committed an act

2. 43 P.S. § 802(d) provides that, "An employe shall be ineligible for compensation for any week ... [i]n which his unemployment is due to a stoppage of work, which exists because of a labor dispute (other than a lock-out) at the factory, establishment or other premises at which he is or was last employed...."

of willful misconduct for purposes of the Unemployment Compensation Law is far different from the determination of whether K–Mart made defamatory statements about her, *see Rue*, 456 Pa.Super. at 649, 691 A.2d at 502, those legal conclusions are not at issue here. *Cf. Bortz v. Workers' Compensation Appeal Board*, 546 Pa. 77, 683 A.2d 259 (1996) (willful misconduct determination in unemployment proceeding differs from disability determination in workers' compensation proceeding). Unlike *Bortz* and *Odgers*, the issue in this case is neither one of law, nor a mixed question of law and fact. Instead, it is an issue of pure fact, concerning whether Rue did or did not steal a bag of potato chips. As such, the differences between the public policies of the Unemployment Compensation Law and the civil action for defamation are not relevant. A fact is a fact, regardless of public policy. Thus, we conclude that the first prong of the collateral estoppel test, identity of issues, is satisfied here.

*Full and Fair Opportunity to Litigate the Issue*

Turning to the fourth prong, whether K–Mart had a full and fair opportunity to litigate the issue of whether Rue stole a bag of potato chips, Rue notes, quite correctly, that proceedings before a Referee satisfy the minimum requirements of procedural due process. Parties to such proceedings have, *inter alia*, the right to be represented by counsel, the right to present testimony and documentary evidence, and the right to subpoena and cross-examine witnesses. *See* 34 Pa.Code §§ 101.21 (relating to conduct of hearings); 101.31 (relating to subpoenas); and 101.52 (relating to investigation reports). *See also Unemployment Compensation Board of Review v. Ceja*, 493 Pa. 588, 427 A.2d 631 (1981) (plurality opinion). However, proceedings before a Referee clearly do not allow parties to litigate issues in the manner available in a court of record. For example, the Rules of Evidence do not apply in Referees' hearings, and there is no procedure for prehearing discovery. *See* Section 505 of the Unemployment Compensation Law, *as amended*, 43 P.S. § 825 ("[T]he conduct of hearings and appeals ... shall be in accordance with rules of

procedure prescribed by the board whether or not such rules conform to common law or statutory rules of evidence and other technical rules of procedure. . . .").

Moreover, there are two significant factors that distinguish unemployment compensation proceedings from court proceedings. First, the unemployment compensation system is specifically designed to adjudicate matters quickly, because one of its primary goals is to "get[ ] money into the pocket of the unemployed worker at the earliest point that is administratively feasible." *California Department of Human Resources v. Java*, 402 U.S. 121, 136, 91 S.Ct. 1347, 1356, 28 L.Ed.2d 666 (1971). *See also McNeill v. Unemployment Compensation Board of Review*, 510 Pa. 574, 579, 511 A.2d 167, 169 (1986); *Swineford v. Snyder County*, 15 F.3d 1258, 1268–69 (3d Cir. 1994). Thus, proceedings before a Referee are, by design, brief and informal in nature.[3] *See, e.g.*, 34 Pa.Code §§ 101.51 (relating to *ex parte* hearings); 101.121–101.126 (relating to telephone hearings).

Second, the amount of money in controversy in most unemployment compensation proceedings is, from the employer's perspective, quite minimal. The most the employer has at stake is a small increase in the amount of future contributions to the Unemployment Compensation Fund. In light of such minimal risk, the employer often has little incentive to litigate vigorously, or even to retain counsel and/or attend a hearing. This is in stark contrast to a subsequent civil action, which, as this case exemplifies, may subject the employer to liability for amounts tens of thousands of times greater than those at stake in the proceedings before the Referee.

The substantial procedural and economic disparities between unemployment compensation proceedings and later civil proceedings negate the preclusive effect of a Referee's factual

**3.** The sheer volume of decisions rendered by Referees is illustrative of this point. According to Department of Labor and Industry statistics, in the one year period from July 1, 1996 to June 30, 1997, the Commonwealth's fifty Unemployment Compensation Referees issued a total of 51,199 decisions—an average of 1,024 decisions per Referee. Considering this caseload, the amount of time a Referee may devote to any individual case is necessarily limited.

findings. Pursuant to Restatement (Second) of Judgments, Section 28, issue preclusion is not appropriate where:

> A new determination of the issue is warranted by differences in the quality or extensiveness of the procedures followed in the two [proceedings] or . . .

> [T]he party sought to be precluded . . . did not have an adequate opportunity or incentive to obtain a full and fair adjudication in the initial action.

The comments to Section 28 suggest that collateral estoppel should not apply where, "the procedures available in the first [proceeding] may have been tailored to the prompt, inexpensive determination of small claims and thus may be wholly inappropriate to the determination of the same issues when presented in the context of a much larger claim," nor where, "the amount in controversy in the first action may have been so small in relation to the amount in controversy in the second that preclusion would plainly be unfair." Restatement (Second) of Judgments, Section 28, Comments (d) and (j). *See also Verbilla v. Workers' Compensation Appeal Board,* 668 A.2d 601, 605 (Pa.Cmwlth.1995) (discussing Section 28, Comment (d)).

■ The circumstances described in Section 28 are present here. Because of the fast and informal nature of the proceedings before the Referee, as well as the negligible economic consequences thereof, we conclude that K–Mart did not have a full and fair opportunity to litigate the issue of whether Rue stole a bag of potato chips. Accordingly, the Superior Court correctly held that the Referee's factual finding that Rue did not steal a bag of potato chips should not have been accorded preclusive effect in the defamation action.[4]

Thus, we AFFIRM the Order of the Superior Court.

SAYLOR, J., did not participate in the consideration or decision of this case.

4. We note that our holding today is limited to the application of collateral estoppel in the unemployment compensation context. It has no bearing on the body of caselaw concerning the preclusive effect of workers' compensation proceedings because of the distinct statutes and

procedures at issue in those cases. *See, e.g., Kohler v. McCrory Stores,* 532 Pa. 130, 615 A.2d 27 (1992) (Workers' Compensation Referee's finding of work-related injury had preclusive effect in subsequent negligence action); *Capobianchi v. BIC Corp.,* 446 Pa.Super. 130, 666 A.2d 344 (1995) (Workers' Compensation Referee's finding of no work-related injury had preclusive effect in subsequent products liability action); *Christopher v. Council of Plymouth Township,* 160 Pa.Cmwlth. 670, 635 A.2d 749 (1993) (Workers' Compensation Referee's finding of no work-related disability had preclusive effect in subsequent action on collective bargaining agreement).